IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| ANDREW E. BRIESMEISTER and | ) | |
| DEBORAH E. BRIESMEISTER, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 180319N |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

Plaintiffs appealed Defendant's Written Objection Determination for the 2015 tax year, dated July 30, 2018. A trial was held in the Oregon Tax Court's Jill A. Tanner Mediation Center on December 4, 2018, in Salem, Oregon. Gregg Stevens (Stevens), EA, LTC, appeared and testified on behalf of Plaintiffs. Andrew E. Briesmeister (Briesmeister) also testified on behalf of Plaintiffs. Adrienne Carpenter (Carpenter), tax auditor, appeared and testified on behalf of Defendant. Plaintiffs' Exhibits 1 to 5 and Defendant's Exhibits A to I were received without objection.

## I. STATEMENT OF FACTS

Plaintiffs claimed a loss of $15,486 on their 2015 Schedule C, which listed the principal business as "contractor, ammunition." (Def's Ex A at 7.) Plaintiffs reported no gross receipts and reported the following expenses: $1,826 for car and truck; $9,070 for depreciation (property is described as "tooling"); $343 for other interest; $300 for legal and professional services; $113 for office expenses; $100 for taxes and licenses; $8 for meals and entertainment; and $3,726 for

---

[1] This Final Decision incorporates without change the court's Decision, entered February 28, 2019. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

other expenses, which were for phone and computer. (*Id.* at 7-8, 11.) Plaintiffs received nearly all their income from "wages, salaries, tips, etc." (*Id.* at 4.) Defendant disallowed Plaintiffs' Schedule C loss, concluding that the activity "had not yet risen to the level of a business and that your incurred expenses were start-up expenses." (Def's Ex E at 1.)

A.     *Briesmeister's Projectile Activity*

Briesmeister testified that he has a bachelor's degree in manufacturing engineering and has worked his entire adult life in design, engineering, and manufacturing. He characterized his Schedule C activity as a projectile business engaged in "product development" or "research and development." Briesmeister testified that he is "attempting to produce a better product" and market that product to potential customers. He testified that his vision is to develop technology to produce well-performing copper bullets and then market that technology. This might mean selling or licensing the intellectual property that he develops. Briesmeister acknowledged that he is aware of other companies that already manufacture copper bullets. He is trying to produce a bullet that performs differently than those other bullets.

Briesmeister testified that, in early 2014, he began investigating the concept and researching subcontractors that could manufacture the product. He created the LLC "USA Futura" in 2014. Briesmeister experienced a slowdown in late 2014 and 2015 because he was caring for aging parents living in Washington. By August 2015, he was back to working on the activity and, in October 2015, he purchased a large piece of machinery, which is his primary asset. He engaged someone to provide technical support for the machine in 2017 and in 2018.

Briesmeister testified that he purchased the machine used from a vendor. (*See* Def's Ex D at 16-19 (photos of machine and sample bullets produced).) It had previously been used to produce parts for medical equipment, but can produce various types of small metal parts,

including bullets. Although the machine can produce a few bullets, it cannot produce volume for the market; that would require a subcontractor.

Briesmeister testified that the nature of his research and development activity is that he must build something and test it to see if it works. He is experimenting with metallurgy, trying to make copper bullets with no lead, which is toxic. Briesmeister testified that copper is a complex metal; there are many different alloys containing different metals, different hardness. He is trying to find the right alloy and produce consistent results. Briesmeister testified that he has "dozens of different samples."

Briesmeister testified that he has been in communication with a potential customer, Corbon, an ammunition manufacturer. (*See* Def's Ex E at 14-25.) In 2014, he paid a company in Grants Pass to make samples and he sent those samples to Corbon. The samples met Corbon's standards. However, when Briesmeister ordered more samples from the Grants Pass company, the shape and dimensions were wrong. At that time, he determined that he needed to control the entire process, so he bought the machine in 2015 and used it to produce samples in 2016. He testified that he has talked with potential customers other than Corbon but has not sent samples to any of them. Carpenter inquired about a large gap in Briesmeister's communications with Corbon between 2014 and 2017; she also noted an email on August 20, 2014, from Briesmeister that references no response received to his prior email. (*See* Def's Ex E at 18-19.) Briesmeister testified that communication occurred in other manners besides email.

Carpenter testified that Briesmeister's trial testimony was mostly consistent with his audit interview, during which he described pursuing marketing and metallurgical research, and trying to develop product lines. (*See* Def's Ex C at 7.) She noted that he said at audit that he was in the "start-up phase" in 2015. (*See id.* at 7, 24.) Carpenter testified that, based on Briesmeister's

statement and the fact that he did not make any parts or bullets in 2015, she concluded he was still in the start-up phase in 2015. (*See id.* at 8.) She testified that Briesmeister was employed full time in 2015 and spent time tending his animals and helping his parents, so it is doubtful he could have spent time on the projectile activity, other than on a "limited and sporadic" basis.

B.      *Licensure*

Defendant presented a new theory at trial; namely, that Briesmeister could not have been engaged in an active trade or business as of 2015 because he had not obtained the necessary licensure for an ammunition manufacturing business. Carpenter testified that Briesmeister needs a Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) license and a county license to manufacture ammunition on his property.

Defendant provided excerpts from the Gun Control Act of 1968, 18 USC § 921. (Def's Ex G at 26.) Carpenter noted the broad definition of "ammunition," which includes all the parts composing the ammunition. (*See id.*) She further noted the definitions of "manufacturer" and "engaged in business" for purposes of the Act. The regulations accompanying the Act obligate each person manufacturing ammunition to have an ATF license. (*Id.* at 42-43.) Based on those definitions, Carpenter concluded that Briesmeister is manufacturing ammunition, but not yet "engaged in business" because he is not making a livelihood from manufacturing ammunition.

Briesmeister distinguished "ammunition" from "projectile"; he testified "ammunition" is an assemblage that includes a projectile. Briesmeister testified that he is aware that an ATF license is required to manufacture ammunition. He testified that ATF licenses are easy to obtain, but he does not believe one is necessary because he is not manufacturing ammunition.

Carpenter testified that she asked a county planner about licenses required for Briesmeister's activity and was told it would take 30 to 150 days, depending on the specific type

of license required under county ordinances. (*See* Def's Ex G at 19-23.) Briesmeister testified that he was aware of the need for a county permit to conduct a machine shop business on his property and he received the appropriate permit from the county in February 2017.

## II. ANALYSIS

The issue presented is whether Briesmeister was carrying on an active trade or business within the meaning of Internal Revenue Section (IRC) section 162 during the 2015 tax year.

The legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the [IRC] relating to the measurement of taxable income of individuals, * * * modified as necessary by the state's jurisdiction to tax and the revenue needs of the state[.]" ORS 316.007(1).[2] In general, terms have "the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined * * *." ORS 316.012. On the issue of trade or business expenses, Oregon has made no modifications relevant to this case. *See Kirwan v. Dept. of Rev.*, 21 OTR 424, 427 n2 (2014).

Deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief[.]" ORS 305.427. "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *."

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

*Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "In an appeal to the Oregon Tax Court from an assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency, even if the amount so determined is greater or less than the amount of the assessment determined by the Department of Revenue, and even if determined upon grounds other or different from those asserted by the department * * *." ORS 305.575.

IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." "[T]o be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify." *Comm'r v. Groetzinger*, 480 US 23, 35, 107 S Ct 980, 94 L Ed 2d 25 (1987). "To determine whether the activities of a taxpayer are 'carrying on a business' requires an examination of the facts in each case." *Higgins v. Commissioner,* 312 US 212, 217, 61 S Ct 475, 478, 85 L Ed 783 (1941).

A.    *Carrying On a Trade or Business*

The question is whether Briesmeister was *carrying on* a trade or business during the 2015 tax year. That term is not defined in the code or regulations. Courts have interpreted the term by distinguishing between "pre-opening expenses" and ordinary business expenses; that is, "expenses incurred between the decision to establish a business and the actual beginning of business operations." *Richmond Television Corp. v. U.S.*, 345 F2d 901, 905 (4th Cir 1965), *vacated and remanded for consideration of amortization claims* 382 US 68 (1965).

> "[E]ven though a taxpayer has made a firm decision to enter into business and over a considerable period of time spent money in preparation for entering that business, he still has not 'engaged in carrying on any trade or business' within the intendment of section 162(a) until such time as the business has begun to function as a going concern and performed those activities for which it was organized."

*Id.* at 907. Courts use "pre-opening expenses" and "start-up expenditures" interchangeably. *See, e.g., Johnsen v. Comm'r*, 794 F2d 1157, 1162, 1163 (6th Cir 1986) ("Section 195 permits corporations and individuals to amortize start-up or pre-opening expenses"). IRC section 195 permits a deduction for "start-up expenditures" in the tax year "in which the active trade or business begins[.]" Thus, even under IRC section 195, Briesmeister must have carried on a trade or business in 2015.

One rationale for the pre-opening expense doctrine is that such expenses are often capital in nature, like expenses incurred to create or acquire an asset. *See Johnsen*, 794 F2d at 1162; *see also Fishman v. Comm'r*, 837 F2d 309, 312 (7th Cir 1988) (pre-opening or start-up costs "yield benefits over the entire life of the enterprise, and therefore must be capitalized"); *see also Sorrell v. Comm'r*, 882 F2d 484, 486 (11th Cir 1989) ("expenses incurred during the pre-opening period are part of the cost of acquiring the capital asset; as such, they are * * * capital expenditures"); *see also Toth v. Comm'r*, 128 TC 1, 1 (2007) ("court construes the term 'startup expenditure' to denote an expenditure that is capital rather than ordinary").

Accordingly, courts examine the nature of the expenses when considering whether they are deductible under IRC section 162(a). *See U.S. v. Manor Care*, 490 F Supp 355, 362 (D Md 1980) (allowing deduction where "the expenses were the type incurred in the normal operation of the" business and that "produced benefits to the corporations within the same tax year"); *see also Fishman,* 837 F2d at 313 (disallowing deduction for expenses of ground leases incurred to eventually build a shopping center because such expenditures were used to create capital rather than operate the shopping center); *see also Cabintaxi Corp. v. Comm'r*, 63 F3d 614, 619-620 (7th Cir 1995) (allowing deduction where taxpayer, formed to sell, install, and maintain an automated transportation system to cities, incurred expenses associated with efforts to sell the systems to cities); *but see Jackson v. Comm'r*, 864 F2d 1521, 1526 (10th Cir 1989) (disallowing

advertising expenses where taxpayer with license to manufacture, sell, and distribute an audio player/recorder had not yet performed "the ultimate activity for which their business was organized—attempting to sell player/recorders").

To determine if the expenses at issue were incurred as part of the normal operation of the business, the court must be able to discern the purpose and activities for which the business was created. "[W]hile it is true that an enterprise need not have generated sales or other revenue to have begun to carry on a business, it must nonetheless have started to function in a particular and identifiable line of work." *Weaver v. Comm'r*, 87 TCM (CCH) 1259 (2004), 2004 WL 938293 at *6 (US Tax Ct). In *Weaver*, the taxpayer "sought to identify emerging automotive technologies and to develop them with strategic partners." *Id.* at *3. The taxpayer's expenses related to proposals soliciting third-party interest, advertising, travel, meals, and entertainment. *Id.* at *9. The court looked for "commitment to a particular and focused project[,]" but found taxpayer had not progressed beyond "preparatory steps." *Id.* at *11, 12; *see also McKelvey v. Comm'r*, 83 TCM (CCH) 1339 (2002), 2002 WL 341044 (US Tax Ct) (concluding taxpayer still investigating feasibility of tree farm where taxpayer had purchased a parcel of land, paid for a forest management plan, and conducted a "pilot test planting," but not yet decided which species of trees to plant nor harvested any trees); *see also Reems v. Comm'r*, 67 TCM (CCH) 3050 (1994), 1994 WL 243475 (US Tax Ct) (concluding taxpayer had not commenced timber business where taxpayer purchased a parcel of land, paid for repair and maintenance of logging roads on the land, and sold two trees and some firewood).

Briesmeister characterized his activity as creating a product to ultimately sell or license to a manufacturer. He compared his activity to that of an inventor, maintaining that the business began when he acquired the machine and started experimenting with different copper alloy

combinations.[3] Two cases in this vein are instructive. In *Asta v. Comm'r*, 35 TCM (CCH) 492 (1976), 1976 WL 3304 (US Tax Ct), the taxpayer continued research she had started while getting her master's degree during a period when she was otherwise unemployed and deducted expenses associated with conducting that research. The court disallowed her expenses, finding she had "not attempted to find a buyer or publisher for her research" and failed to submit "any evidence that she has earned any money from writing in the past or has prospects of compensation in the future." In contrast with *Asta*, the taxpayer in *Lamont v. US*, 80 AFTR 2d 97-7320, WL 881204 (Fed Cl 1997) was allowed expenses for a business created "to develop computer software and systems for helping translators [of foreign languages] and also to provide computer related product[s] and services in that area." *Id.* at *1, 5. By the tax year at issue, the taxpayer had investigated the feasibility of the idea by consulting with an intellectual property attorney to determine that no existing products performed the same functions; purchased three computers and two printers; engaged three computer programmers; engaged an outside firm to evaluate the efficiency of its design; received a copyright; and made a single sale of software. *Id.* at *2-3.

B.      *Application to Briesmeister's Projectile Activity*

Briesmeister's projectile activity had not progressed to an active trade or business as of 2015. Although Briesmeister has relevant education and experience, projectile design is a new

---

[3] Plaintiffs rely on Treas Reg 1.248-1(d), "Determination of when corporation begins business," which states in pertinent part that "the acquisition of operating assets which are necessary to the type of business contemplated may constitute the beginning of business." Defendant maintains that IRC section 248, and its accompanying regulation, applies to start-up expenses of *corporations*, not LLCs or individuals. Plaintiffs dispute Defendant's interpretation, arguing that IRC sections 195 and 248 are virtually identical and should be read similarly, particularly with respect to the question of when the business started. On this question, the court observes that Treas Reg 1.248-1(d) also states that "[t]he determination of the date the corporation begins business presents a question of fact which must be determined in each case in light of all the circumstances of the particular case." The regulation does not definitively state that business begins with the purchase of operating assets.

activity for which he has no income history and presented no evidence of prospects for future income from the activity. Briesmeister had a general product concept (copper bullet) as of 2015 but had not advanced in development of that product to move beyond a preparatory or start-up phase. That is in contrast with the software design activity at issue in *Lamont*, in which several programmers worked to develop the software and progressed to the point of creating a product that could be tested by an outside firm, copyrighted, and even sold to a user. Briesmeister's progress as of 2015 — experimenting with metallurgy and his machine — is more akin to aspiring tree farmers selecting species to plant or a recent graduate continuing research.

Briesmeister's expenses for the 2015 year were consistent with start-up or pre-opening expenses; over half were depreciation associated with "tooling," presumably the machine. It is difficult to say what might constitute "ordinary" expenses for Briesmeister's activity because the ultimate purpose of his projectile design activity was somewhat vague. Indeed, Defendant believed Briesmeister intended to manufacture ammunition, whereas the court concludes from his testimony that he intended to develop a prototype to be sold or licensed for manufacture by another company. "The development of a prototype is often a major part of starting up a business. The work done on a prototype may have a value that exceeds—and would not be justified by—the making of a single item." *Bailey v. Comm'r*, 103 TCM (CCH) 1499 (2012), 2012 WL 1082928 (US Tax Ct); *see also Lardy v. Comm'r*, 41 TCM (CCH) 217 (1980), 1980 WL 4294 (US Tax Ct) (requiring capitalization of costs associated with creating a prototype boat for taxpayer's future activity of selling his services overseeing boat construction or using the boat for charters).

Finally, Plaintiffs presented no evidence that Briesmeister engaged in the activity with continuity and regularity in 2015. He was understandably busy with family affairs and other

work in 2015, leaving little time for the projectile design activity. Other than purchasing the machine in October 2015, it is unclear what actions Briesmeister took in furtherance of his projectile activity in 2015. Plaintiffs provided no evidence that Briesmeister produced any samples or communicated with Corbon or other companies in that year.

C.      *Licensure*

The parties focused at trial on the issue of whether Briesmeister's projectile design activity requires an ATF license and, if so, whether his failure to obtain that license prevents him from carrying on a trade or business. *See, e.g., Shammel v. Dept. of Rev.*, TC-MD 120838D, WL 3964348 (Or Tax M Div Jul 31, 2013) (holding that the taxpayer was not carrying on an active ammunition and weapons manufacturing business prior to receiving a federal license); *but see Manor Care*, 490 F Supp at 359 (stating "it would be reading too much into the case [*Richmond Television*] to conclude that, as a matter of law, no company can deduct expenses incurred before it obtains a required license"). The parties disagree whether Briesmeister was required to obtain an ATF license for his activity. The court declines to decide whether such license was required because it is not necessary to the disposition of this case. As discussed above, the court finds Briesmeister was not carrying on an active trade or business in 2015.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

III. CONCLUSION

Upon careful consideration, the court concludes that Briesmeister was not carrying on an active trade or business within the meaning of IRC section 162(a) during the 2015 tax year. His project design activity had not progressed beyond the start-up phase. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ____ day of March 2019.

ALLISON R. BOOMER
MAGISTRATE

***If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.***

***This document was signed by Magistrate Allison R. Boomer and entered on March 19, 2019.***